# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **RONALD WAYNE COLE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:16-CV-8148-SLB** |
| | ) | **Crim. Case No. 2:06-CR-0047-SLB-JHE** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [hereinafter Motion to Vacate], filed by petitioner, Ronald Wayland Cole, Jr. (Doc. 1; crim. doc. 16.)[1] For the reasons set forth below, the court finds that Cole's Motion to Vacate is due to be denied.

## I. STANDARD OF REVIEW

Pursuant to § 2255 –

A prisoner in custody under sentence of a [district] court . . . claiming the right to be released upon the ground that the sentence was imposed

---

[1]Citations to documents in the court's record in petitioner's Motion to Vacate appear as "(Doc. __)." Citations to documents in the court's record in the criminal proceedings against petitioner, Case No. 2:06-CR-0047-SLB-JHE, appear as "(Crim. Doc. __)." Citations to page numbers refer to the page numbers assigned to each document by the court's CM/ECF electronic filing system.

> in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised [on] direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004)(quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir.1988)(quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep.1981)))(internal quotations omitted). Cole has the burden of showing he is entitled to relief from his sentence. *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978)(citing *Coon v. United States*, 441 F.2d 279 (5th Cir.), *cert. denied*, 404 U.S. 860 (1971)).[2] He must prove "not merely that the errors [in the proceeding] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the entire proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

---

[2]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

## II.  BACKGROUND

On February 2, 2006, the Government filed an Indictment against Cole, which charged Cole as follows:

### COUNT ONE:  [21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)]

The Grand Jury charges that:

On or about the 4th day of July, 2005, in Jefferson County, within the Northern District of Alabama, the defendant,

**RONALD WAYLAND COLE,**

did knowingly, intentionally, and unlawfully possess with the intent to distribute 5 grams or more of a mixture and substance containing a detectable amount of cocaine base, more commonly known as "crack cocaine," a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

### COUNT TWO: [18 U.S.C. § 924(c)(1)(A)(i)]

The Grand Jury charges that:

On or about the 4th day of July, 2005, in Jefferson County, within the Northern District of Alabama, the defendant,

**RONALD WAYLAND COLE,**

knowingly used and carried a firearm, that is, a Charter Arms .44 caliber pistol, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the drug trafficking crime charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

**COUNT THREE:** **[18 U.S.C. § 922(g)(1)]**

The Grand Jury charges that:

On or about the 4th day of July, 2005, in Jefferson County, within the Northern District of Alabama, the defendant,

**RONALD WAYLAND COLE,**

after having been convicted on June 29, 1998, in the Circuit Court of Jefferson County, Alabama, of the offenses of Attempted Rape, in case number CC98-0593, Abuse/Neglect, in case number CC98-0594, and Assault (Second Degree), in case number CC97-1141, each of the said offenses being a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting commerce a firearm, that is, a Charter Arms .44 caliber pistol, in violation of Title 18, United States Code, Section 922(g)(1).

(*Id*.) Cole executed a Plea Agreement, (crim. doc. 8), and, on March 30, 2006, he entered a plea of guilty to all Counts of the Indictment. The Plea Agreement contained the following Factual Basis, which Cole admitted:

On July 4, 2005, Officer Koss of the Hueytown Police Department (HPD) was on patrol when he noticed a gray Nissan Maxima in the parking lot of a Shell gas station. The vehicle's headlights were on, and the car appeared to be running and unoccupied. Officer Koss continued his patrol. Approximately thirty minutes later, the officer again passed the Shell gas station and noticed that the vehicle had not moved. Officer Koss parked his patrol car and entered the gas station. Inside the gas station was the attendant, Ms. Marsha Gray, and an unknown black male, later identified as the defendant, Ronald Wayland Cole. Officer Koss asked Ms. Gray if she knew who the Maxima belonged to. She responded that two unknown individuals were in the car and that it had been there for about an hour. Officer Koss exited the station and approached the car. Through an open

window, he saw a silver revolver in plain view on the front passenger seat. For public safety, the officer opened the car door and retrieved the gun, a Charter Arms Bulldog Model .44 caliber pistol. He then reentered the gas station and again asked Ms. Gray and the defendant if either of them had any information concerning the Nissan. The defendant admitted that the vehicle was his. Officer Koss asked the defendant if he had a permit for the gun, to which the defendant replied, "no." Officer Koss then asked the defendant if there were any other weapons in the car. The defendant answered, "no, you can look." At this point, Officer Riley of the HPD arrived at the scene. As the two officers and the defendant approached the car, Cole fled, running behind the Shell station into a wooded area. Unable to apprehend the defendant on foot, the officers radioed for state prison dogs. The dogs later found Cole, who was then taken into custody.

An inventory of the car revealed the following items: two (2) bags containing a green-leafy substance which appeared to be marijuana; thirty (30) individually wrapped packages of an off-white, rock-like substance; a small bag of a white powdery substance; and another bag containing an off-white, rock-like substance. The off-white, rock-like substance was tested confirming the presence of over five (5) grams of cocaine base, commonly known as "crack." The green-leafy substance and the white powdery substance were also tested revealing the presence of marijuana and cocaine hydrochloride, respectively.

Once detained, the defendant was brought to the Hueytown Police Department where he waived his rights and agreed to speak with police officers. In an oral statement, Cole admitted to possession of the drugs. He claimed that he was selling drugs because his criminal history prohibited him from obtaining legitimate employment.

At the time of his arrest, the defendant had previously been convicted on June 29, 1998, in the Circuit Court of Jefferson County, of the following felonies: Attempted Rape, case number CC98-0593, Abuse/Neglect, case number CC980594, and Assault (Second Degree), case number CC97-1 141.

The subject firearm was manufactured outside the State of Alabama. It has been test-fired and found to function as designed.

(Crim. doc. 8 at 2-3.)    At sentencing, Cole stated that he did not know having a pistol was felony and that he was selling drugs to put food in his mouth because he did not have anything else.

Laboratory testing later revealed that the drugs seized at the scene consisted of 23.07 grams of marijuana; 7.67 grams of cocaine hydrochloride; and 5.32 grams of cocaine base or crack; at the time, these quantities converted to 107.95 kilograms of marijuana and a base offense level of 26 for the § 841(a)(1) charge. (Crim. doc. 11 at 4-5 [sealed Presentence Investigation report].)[3] His offense level for both Counts One and Three were enhanced under Chapter 4 of the Sentencing Guidelines. (*Id*. at 7 [citing U.S.S.G. §§ 4B1.1(c); 4B1.4(b)(1)-(3)].) His total enhanced offense level was 34 after a reduction based on his acceptance of responsibility. (*Id*. at 8.) His criminal history category was determined to be VI. (*Id*. at 12 [citing U.S.S.G. § 4B1.1(b)].) The resulting Guidelines range was 202 to 267 months for Counts One and Three and 60 months consecutive for Count Two. (*Id*. at 16.)

Cole was given a custodial sentence at the low-end of the Guidelines range – 202 months on each of Counts One and Three to be served concurrently and 60

_____

[3]Cole did not object to the Presentence Investigation Report.

6

months on Count Two to be served consecutively. (Crim. doc. 13 at 2.) The court found that this sentence was reasonable in light of the sentencing factors found at 18 U.S.C. § 3553(a). It found Cole had devoted his life to committing criminal offenses, beginning as a juvenile and continuing thereafter, which resulted in him having the highest possible criminal history. He had a gun and his drugs were packaged for resale. Also, the court found the lengthy sentence was sufficient, but not greater than necessary, to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment for his offenses, to afford adequate deterrence, and to protect the public from further crimes of the defendant.

Slightly more than a decade after judgment was entered in his case, Cole filed the instant Motion to Vacate under 28 U.S.C. § 2255. In his Motion he raises three claims – a *Samuel Johnson*[4] claim that he was improperly determined to be an armed career criminal, a Double Jeopardy Clause claim based on the gun charges, and an *Apprendi*[5] claim based on his right to a jury trial on the issue of the amount of drugs used for sentencing. (*See generally* doc. 1.) In a supplemental brief, Cole also argues that *Dimaya*[6] provides him a ground for relief on his conviction under § 924(c).

---

[4]*Johnson v. United States*, 135 S. Ct. 2551 (2015).

[5]*Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[6]*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

(Doc. 9.)  For the reasons set forth below the court finds that Cole is not entitled to relief.[7]

## III.  DISCUSSION

### A.  DOUBLE JEOPARDY

Cole contends that separate convictions for the drug offense and the gun charges violate the Double Jeopardy Clause of the Fifth Amendment.  (Doc. 1 at 3.) This claim is precluded by binding Eleventh Circuit precedent.

According to the Eleventh Circuit, Congress intended cumulative punishments under § 924(c) and the predicate crime of violence or drug offense; therefore, "the Double Jeopardy Clause does not bar the imposition of cumulative punishments under both [the predicate offense] and 18 U.S.C. § 924(c)." *United States v. Malone*, 78 F.3d 518, 519 n.1(11th Cir. 1996)(citing *United States v. Moore*, 43 F.3d 568, 574 (11th Cir. 1995); *United States v. Martin*, 38 F.3d 534, 535 (11th Cir. 1994)). Likewise, it intended cumulative punishments for using a firearm during the commission of a drug offense and for a convicted felon possessing a firearm; therefore, the Double Jeopardy Clause does not prohibit cumulative punishment for

_____

[7]The court notes that Cole's claims, except for his *Samuel Johnson* and *Dimaya* claims are time barred.  However, the Government has waived their affirmative defenses.  (Doc. 6 at 2.)  Nevertheless, even if the court assumes the claims are timely filed and are not barred by waiver in the Plea Agreement, these claims are foreclosed by binding caselaw.

violations of § 924(c) and § 924(e). *United States v. Howard*, 918 F.2d 1529, 1534 (11th Cir. 1990)("Congress enacted section 924(c) to deter potential felons from using firearms in the commission of certain crimes; both the legislative history of that section and the prohibitive nature of the sentence enhancement indicate that the legislature realized its intent. Similarly, the legislative history of the Armed Career Criminal Act, 18 U.S.C. § 924(e), demonstrates that Congress sought to punish career criminals with enhanced sentences for repeat offenders. [Defendant] has not submitted any evidence to establish, or even suggest, that the statutes at issue are not an accurate reflection of Congressional intent. Accordingly, his double jeopardy claim is without merit.")(internal citations omitted).

Therefore, Cole's Petition asserting a Double Jeopardy Claim will be denied and the court will not issue a certificate of appealability as to this claim.

## B. JURY TRIAL ON DRUG AMOUNTS

Cole alleges that he was entitled to a jury trial on the issue of the quantity of the drugs used during sentencing. (Doc. 1 at 9-10 [citing *Apprendi*].) This claim is precluded by binding precedent.

"Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). "'Elements' are the constituent parts of a

crime's legal definition – the things the prosecution must prove to sustain a conviction. At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)(quotations and citations omitted).

> . . . [W]hen a defendant pleads guilty and accepts the drug quantity determination contained in the pre-sentence report or agrees to drug quantity at sentencing or in his plea colloquy, he waives any right to appeal his sentence on the basis of *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)], regardless of what sentence is ultimately imposed. *See United States v. Walker,* 228 F.3d 1276, 1278 n.1 (11th Cir. 2000) (affirming the defendant's life sentence, noting that "[i]n *Apprendi,* the Supreme Court required that during a jury trial, the government must be made to prove and the jury convict on the factual evidence necessary for a sentence enhancement beyond the statutory maximum" and concluding that since the defendant "pled guilty in this case and accepted the contents of the PSI, he lost any right to appeal on the basis of this argument"), *cert. denied,* 532 U.S. 944, 121 S. Ct. 1408, 149 L. Ed. 2d 350 (2001). This is so because a defendant's stipulation as to drug quantity serves to waive the right to a jury trial on that issue, even when that drug quantity results in a sentence in excess of the otherwise applicable statutory maximum. Indeed, just as the defendant's guilty plea to a substantive offense serves as the equivalent to a jury's finding beyond a reasonable doubt of that defendant's guilt, so does a stipulation to a specific drug quantity – whether as part of a written plea agreement, part of a jury trial, or at sentencing – serve as the equivalent of a jury finding on that issue, since the stipulation takes the issue away from the jury.

> Accordingly, in prior cases in which defendants pled guilty to violating § 841, [the Eleventh Circuit has] affirmed sentences that violated *Apprendi* when there was agreement about the drug quantity.

> *See United States v. Pease,* 240 F.3d 938, 944 (11th Cir.
> 2001)(affirming the defendant's thirty-year sentence where he admitted
> in both his plea agreement and plea colloquy that he had accepted
> delivery of three kilograms of cocaine); *United States v. Gallego,* 247
> F.3d 1191, 1200 (11th Cir. 2001)(affirming the defendant's life sentence
> when his counsel stated "there is no question but that [the defendant]
> had the ten kilograms of cocaine, he pled guilty to possessing the ten
> kilograms of cocaine"). . . .

*United States v. Sanchez*, 269 F.3d 1250, 1272 n. 40 (11th Cir. 2001); *see United*

*States v. Heard*, 561 Fed. Appx. 873, 877 (11th Cir. 2014)(petitioner's *Alleyne* claim

was "without merit because in the context of a guilty plea, an offense element – such

as the attributable drug quantity – may be established either by a jury *or* by an

admission")(emphasis in original).

In this case, the Indictment charged Cole with "knowingly, intentionally, and

unlawfully possess[ing] the intent to distribute 5 grams or more of a mixture and

substance containing a detectable amount of cocaine base." (Crim. doc. 1 at 1.) He

admitted in his Plea Agreement and during the plea colloquy that he had over 5 grams

of cocaine base. The Presentence Investigation Report stated that "laboratory tests

confirmed the presence of 5.32 grams of cocaine base ('crack'), 23.07 grams of

marijuana, and 7.61 grams of cocaine hydrochloride;" Cole did not object to these

findings. Therefore, his claim that the attributable drug quantity was required to be

found by a jury is without merit.

Cole's Petition as to this claim will be denied and the court will not issue a certificate of appealability as to this claim.

## C. ARMED CAREER CRIMINAL ACT [ACCA] – Section 924(e)

The ACCA states:

(e)(1)  In the case of a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony . . . committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

(2)  As used in this subsection –

   . . .

   (B)  the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that –

      (i)  has as an element the use, attempted use, or threatened use of ***physical force*** against the person of another; or

      (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(emphasis added).  If the prior conviction was for an offense defined to include "the use, attempted use, or threatened use of physical force," then the prior conviction qualifies categorically as a "violent felony."  *See United States v. Davis*, 875 F.3d 592, 596 (11th Cir. 2017).  The Eleventh Circuit set forth the

following regarding the court's determination of whether a prior conviction qualifies

as a "violent felony" –

> To determine whether the statute of conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another," [18 U.S.C. § 924(e)(2)(B)(i)], we are confined to looking at the fact of conviction and the elements required for conviction. *United States v. Hill*, 799 F.3d 1318, 1322 (11th Cir. 2015); *United States v. Braun*, 801 F.3d 1301, 1303 (11th Cir. 2015); *United States v. Estrella*, 758 F.3d 1239, 1249 n.4 (11th Cir. 2014); *see also Taylor v. United States*, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159, 109 L. Ed.2d 607 (1990). "All that counts . . . are the elements of the statute of conviction," not the "specific conduct of [a] particular offender." *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243, 2251-52, 195 L. Ed. 2d 604 (2016)(quotation marks omitted).

> We apply federal law in interpreting the ACCA, but state law in determining the elements of state offenses, keeping in mind that state law is what the state supreme court says it is. [*Curtis*] *Johnson* [*v. United States*], 559 U.S. [133,] 138, 130 S. Ct. [1265,] 1269 [(2010)](explaining that when deciding whether a prior conviction is a "violent felony" under the ACCA, "[w]e are . . . bound by [a state court's] interpretation of state law, including its determination of the elements of [the statute of conviction]"); *Braun*, 801 F.3d at 1303 ("We are bound by federal law when we interpret terms in the ACCA, and we are bound by state law when we interpret the elements of state-law crimes."); *Estrella*, 758 F.3d at 1249 n.4 (explaining that "the question we are answering here is whether those elements as defined by state law, including state court decisions," qualify for a federal sentence enhancement); *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012)("[W]e look to [state] case law to determine whether a conviction under [a state statute] necessarily involves the employment of 'physical force' as that term is defined by federal law.").

> The Supreme Court has held that we must first employ what is known as the "categorical approach." *Hill*, 799 F.3d at 1322. Under

that approach, regardless of what the true facts are, "we presume that the state conviction rested upon the least of the acts criminalized by the statute . . . ." *Esquivel-Quintana v. Sessions*, 581 U.S. ___, 137 S. Ct. 1562, 1568, 198 L. Ed. 2d 22 (2017)(alterations and quotation marks omitted); *see, e.g.*, *Braun*, 801 F.3d at 1307. And then we must decide if the least of the acts criminalized includes the use, attempted use, or threatened use of physical force against another person, 18 U.S.C. § 924(e)(2)(B)(i). If not, that is the end of our inquiry and the prior conviction does not count as a violent felony under the elements clause.

The inquiry is more complicated if there are multiple ways to commit the crime that the statute defines. If that is so, as it often is, we have to determine whether the statute is indivisible, meaning that it includes multiple ways of committing the same offense, or is instead divisible, meaning that it lists multiple offenses. *Mathis*, 136 S. Ct. at 2249. If the statute is indivisible, we use the categorical approach. In that case a conviction under it qualifies as a violent felony only if all of the acts criminalized in the statute involve the use of physical force against the person of another.

But if the statute is divisible, we employ a modification of the categorical approach, aptly known as the "modified categorical approach," to determine "which crime in the statute formed the basis of the defendant's conviction." *Gundy*, 842 F.3d at 1162. Under the modified categorical approach, we can look at certain judicial records, such as the indictment or the plea colloquy, in order to determine which of the multiple crimes listed in the statute the defendant was convicted of committing. *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263, 161 L. Ed. 2d 205 (2005). If we can tell "which statutory phrase the defendant was necessarily convicted under," *United States v. Howard*, 742 F.3d 1334, 1345 (11th Cir. 2014), we return to the categorical approach and apply it to that statutory phrase. Doing so requires us to decide whether the least of the acts criminalized by that statutory phrase (instead of whether all of the acts criminalized by all of the statutory phrases) includes the use, attempted use, or threatened use of physical force against another person, as required by the ACCA's elements clause, 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has

held that the "physical force" that the elements clause requires is "*violent* force – that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140, 130 S. Ct. at 1271.

*United States v. Davis*, 875 F.3d 592, 596-98 (11th Cir. 2017)(emphasis in original).

Cole was convicted of attempted rape in the first degree. Alabama law defines his offense as follows:

> A person commits the crime of rape in the first degree if:
>
> > (1) He or she engages in sexual intercourse with a member of the opposite sex by forcible compulsion; or
> >
> > (2) He or she engages in sexual intercourse with a member of the opposite sex who is incapable of consent by reason of being physically helpless or mentally incapacitated . . . .

Ala. Code § 13A-6-61(a)(1)-(2). Under Alabama law, "sexual intercourse" "has its ordinary meaning and occurs upon any penetration, however slight; emission is not required," and "forcible compulsion" is defined as "Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person." Ala. Code § 13A-6-60(1), (8). A person is "physically helpless" when he or she is "unconscious or for any other reason is physically unable to communicate unwillingness to an act," *id*. (7); a person is "mentally incapacitated" when he or she is "rendered temporarily incapable of appraising or controlling his conduct owing to the influence of a narcotic

or intoxicating substance administered to him without his consent, or to any other incapacitating act committed upon him without his consent," *id.* (6). Rape in the first degree by forcible compulsion or of a physically helpless person are separate, divisible offenses.

The Government contends that Cole was convicted of attempted rape of a physically helpless individual[8] and that such a crime does not qualify as a violent

---

[8]The PSR recounts the following facts related to Cole's conviction:

The victim of the attempted sexual assault was the defendant's aunt, . . . who suffered from multiple sclerosis and was bed-ridden at the time. The defendant was seen exiting his aunt's bedroom without clothes on by his grandfather. The offense took place at the defendant's grandparents' home.

(Crim. doc. 11 at ¶ 31.) Although these facts would support a finding that Cole's victim was physically helpless as the term is ordinarily defined, Alabama's statute defines a physically helpless victim to be a person incapable of communicating consent. A sleeping victim is physically helpless; a bed-ridden victim is not necessarily physically helpless under the Alabama definition. "Multiple sclerosis (MS) is a chronic, inflammatory, degenerative disorder that damages the myelin sheath surrounding the nerve fibers in the brain and spinal cord. The damage disrupts the normal transmission of nerve impulses within the brain and between the brain and other parts of the body, causing impairment in muscle coordination, strength, balance, sensation, and vision." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, part A2 Listings § N.1. It can cause "flaccidity, spasticity, spasms, incoordination, imbalance, tremor, physical fatigue, muscle weakness, dizziness, tingling, and numbness," as well as "fatigue; visual loss; trouble sleeping; impaired attention, concentration, memory, or judgment; mood swings; and depression." *See id.* § N.2. It generally does not result in an inability to communicate.

Under the limited information available, the court finds the facts set forth

16

felony. (Doc. 6 at 3 [citing *United States v. Owens*, 672 F.3d 966 (11th Cir. 2012)]).

The court notes that it is impossible to have sexual intercourse with a non-consenting

adult without the use of some physical force. For an offense to fall under the

ACCA's elements clause, however, the offense must have an element of "violent

force – that is, force capable of causing physical pain or injury to another person."

*Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010); *see also Stokeling v.*

*United States*, 139 S. Ct. 544, 553 (2019). Actual pain or injury is not required.

"*Johnson* thus does not require any particular degree of likelihood or probability that

the force used will cause physical pain or injury; only ***potentiality***." *Stokeling*, 139

S. Ct. at 554. The force involved must be more than "the merest touch;" however,

physical forces, such as "a slap in the face," *Curtis Johnson*, 559 U.S. at 143, or the

prying of fingers from around money, *Stokeling* 139 S. Ct. at 555, are sufficiently

"violent" to satisfy the physical force requirement of the elements clause "when it is

sufficient to overcome a victim's resistance."[9] *Id*. at 554.

---

above do not negate a finding that Cole attempted to rape his bed-ridden aunt by
forcible compulsion. However, because the Government asserts that Cole was
convicted under §13A-6-61(a)(2), and Cole has not objected or otherwise disagreed,
the court will address only whether rape in the first degree under § 13A-6-61(a)(2)
is a violent felony.

[9]The Court noted:

In *Castleman*, the Court noted that for purposes of a statute focused on

17

The court holds that attempted first degree rape of a physically-helpless or mentally-incapacitated individual (or attempted first degree rape by forcible compulsion) has as an element the use, attempted use, or threatened use of physical force against the person of another that is sufficient to categorically qualify as a "violent felony" pursuant to the elements clause of the Armed Career Criminal Act. Nevertheless, because the is an issue of first impression in this Circuit and because the court's opinion is based in part on a recent Supreme Court decision the court will grant petitioner a Certificate of Appealability on the sole issue of whether Alabama's

---

domestic-violence misdemeanors, crimes involving relatively "minor uses of force" that might not "constitute 'violence' in the generic sense" could nevertheless qualify as predicate offenses. [*United States v. Castleman*,] 572 U.S. [157,] 165, 134 S. Ct. 1405 [(2014)]. The Court thus had no need to decide more generally whether, under [*Curtis Johnson*], conduct that leads to relatively minor forms of injury – such as "a cut, abrasion, [or] bruise" – "necessitate[s]" the use of "violent force." 572 U.S., at 170, 134 S. Ct. 1405. Only Justice Scalia's separate opinion addressed that question, and he concluded that force as small as "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling," *id.*, at 182, 134 S.Ct. 1405 (alterations omitted), satisfied *Johnson*'s definition. He reasoned that "[n]one of those actions bears any real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury." 572 U.S., at 182, 134 S. Ct. 1405. This understanding of "physical force" is consistent with our holding today that force is "capable of causing physical injury" within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance. Such force satisfies ACCA's elements clause.

*Stokeling*, 139 S. Ct. at 554.

crime of rape in the first degree, Ala. Code § 13A-6-61(a)(2), is a violent felony under the ACCA's elements clause.

## D. RESIDUAL CLAUSE/CRIME OF VIOLENCE CLAIM – SECTION 924(c)

In a Memorandum, Cole argues, "Hobbs Act robbery categorically fails to qualify as a 'crime of violence.[']  Therefore, Ronald Wayland Cole, Jr. is actually innocent of the §924(c) offense and his conviction is void.  In light of Dimaya, [Cole's] convictions cannot be sustained . . . ." (Doc. 9 at 1.)  "Violators of § 924(c) face a mandatory minimum sentence of five years in prison, over and above any sentence they receive for the underlying crime of violence or drug trafficking crime." *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019).  Cole's § 924(c) conviction is based on his use of a firearm during a drug trafficking offense.  (Crim. doc. 1 at 1-2 [the indictment charged Cole with "knowingly us[ing] and carr[ying] a firearm . . . during and in relation to a ***drug trafficking crime***" (emphasis added)].)   His conviction pursuant to § 924(c) was not based on a Hobbs Act robbery or any other crime of violence.

*Samuel Johnson*, *Dimaya*, and *Davis* each addressed only residual clause definitions of violent felony or crime of violence under three similarly-worded statutes.  *See Davis,*139 S. Ct. at 2325-26.  These cases did not address the definition of a drug-trafficking offense; indeed, Congress has "simply declared that certain drug

trafficking crimes automatically trigger § 924 penalties, regardless of the risk of violence that attends them." *Id*. at 2331. As a result, these cases provide Cole no ground for relief from his § 924(c) conviction.

Cole's Petition as to this claim will be denied and the court will not issue a certificate of appealability as to this claim.

## CONCLUSION

Based on the foregoing, petitioner's Motion to Vacate, (doc. 1; crim. doc. 16), is due to be denied. An Order denying the Motion to Vacate and dismissing Cole's habeas petition will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

Cole is not entitled to habeas relief and reasonable jurists could not disagree, except as to the following issue: Whether Cole's prior conviction for attempted rape in the first degree qualifies as a violent felony under the ACCA, § 924(e). The resolution of this issue is reasonably debatable and deserves encouragement to proceed further. Therefore, the issuance of a certificate of appealability is warranted in this case as to this single issue.

**DONE**, this 9th day of August, 2019.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE